UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, a Delaware corporation formerly known as ROYAL INDEMNITY COMPANY, as successor to GLOBE INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BEL AIR MART, a California corporation; R. GERN NAGLER, as Trustee of the John W. Burns Testamentary Trust; ROBERT GERN NAGLER, an individual,<br><br>Defendants. | No.  2:11-cv-00976 JAM-AC<br><br>**ORDER GRANTING BEL AIR'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART ARROWOOD'S MOTION FOR SUMMARY JUDGMENT; AND SANCTIONING ARROWOOD'S COUNSEL** |

This matter is before the Court on Plaintiff and Counter-Defendant Arrowood Indemnity Company's ("Arrowood") Motion for Summary Judgment (Doc. #60) and Defendant and Counter-Claimant Bel Air Mart's ("Bel Air") Cross-Motion for Summary Judgment (Doc. #68).  Bel Air opposed Arrowood's motion (Doc. #67) and Arrowood opposed Bel Air's motion (Doc. #74).  Both Bel Air and Arrowood replied (Doc. ##75, 76, respectively).[1]  For the

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for January 22, 2014.

1

following reasons, Bel Air's motion for summary judgment is granted and Arrowood's motion for summary judgment is granted in part and denied in part.

I. BACKGROUND

Arrowood originally filed this action on April 11, 2011, against Bel Air seeking a declaration of whether it owed a duty to defend and indemnify, whether Bel Air was entitled to independent counsel, and whether Bel Air had breached the policy's cooperation clause (Doc. #1).  Bel Air filed a counterclaim against Arrowood for breach of contract, alleging that Arrowood failed to pay independent counsel's fees (Doc. #10).  In September 2011, the Court granted Bel Air's Motion for Partial Summary Judgment, holding that Bel Air was entitled to independent counsel under Section 2860 of the California Civil Code due to conflicts of interest between Bel Air and Arrowood and staying discovery in this action (Doc. ##41, 42).  On June 3, 2013, the Court granted Bel Air's Motion to Compel Fee Arbitration and ordered that Arrowood submit all issues concerning the amount of fees it owed for the work of Bel Air's independent counsel to binding arbitration pursuant to California Civil Code Section 2860(c) (Doc. #59).

A.   Underlying Action

Bel Air leased commercial property located on the southeast corner of Arden Way and Eastern Avenue in Sacramento, California (the "Property").  Arrowood's Response to Bel Air's Statement of Undisputed Facts ("Arrowood's Response to BA SUF"), Doc. #74-1, ¶ 1.  Up until 2008, Bel Air sublet space at the Property to owners

of a dry cleaning facility.  Id. ¶ 3

In 2007, Bel Air conducted a preliminary investigation to determine whether the Property was contaminated by volatile organic compounds ("VOC"), including tetrachloroethylene or perchloroethlyene ("PCE") and trichloroethene ("TCE"). Id. ¶ 9. In 2007 to 2008, Bel Air received results that VOCs, including PCE, were present in the soil and groundwater. Id. ¶¶ 10-11.  In June 2008, Bel Air tore down the commercial property. Id. ¶¶ 24-25.

On September 3, 2010, Bel Air filed a recovery action, seeking to recover the costs of cleaning up the pollution on the Property ("Underlying Action"). Id. ¶¶ 14-17. Between January and April 2011, three defendants in the Underlying Action filed counterclaims against Bel Air for (1) negligence, (2) declaratory relief, (3) equitable indemnity, and (4) contribution. Id. ¶¶ 18-19. They also alleged that Bel Air's acts or omissions had been responsible for causing or contributing to the contamination of the Property. Id. ¶ 20. On July 20, 2012, a fourth counterclaim was filed against Bel Air for (1) contribution pursuant to Comprehensive Environmental Response, Compensation & Liability Act ("CERCLA") § 113(f), (2) declaratory relief, (3) negligence, (4) hazardous substance statutory indemnity, (5) equitable indemnification, and (6) contribution. Id. ¶ 22. In the fourth counterclaim, they alleged that Bel Air's act or omissions had been responsible in some way for causing or contributing to the contamination of the Property. Id. ¶ 23.

Bel Air tendered all four counterclaims to Arrowood. Id. ¶ 24.  Arrowood accepted the tender of defense under a

3

1  reservation of rights.  Id. ¶ 25.

2     B.   Arrowood and Policies

3  Arrowood's predecessor in interest, Globe Indemnity Company

4  ("Globe"), issued comprehensive general liability policies to Bel

5  Air between 1980 and 1985: Policy No. GYA120835 for the policy

6  period April 1, 1977, to April 1, 1980; Policy No. GYA190960 for

7  the policy period April 1, 1980, to August 1, 1982; and Policy

8  No. GYA248615 for the policy period August 1, 1982, to August 1,

9  1985 (collectively "Pre-1985 Policies").  Bel Air's Response to

10 Arrowood's Statement of Undisputed Facts ("Bel Air's Response to

11 ASUF"), Doc. #67-1, ¶ 1.

12    The Pre-1985 Policies provide, in relevant part, as follows:

> **I.   COVERAGE A – BODILY INJURY LIABILITY
>       COVERAGE B – PROPERTY DAMAGE LIABILITY**
>
>    The Company will pay on behalf of the insured all
> sums which the insured shall become legally obligated
> to pay as damages because of
>
>    A. Bodily injury or
>    B. Property damage
>
> To which the insurance, cause by an occurrence, and
> the company shall have the right and duty to defend
> any suit against the insured seeking damages on
> account of such bodily injury or property damage, even
> if any of the allegations of the suit are groundless,
> false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems
> expedient, but the company shall not be obligated to
> pay any claim or judgment or to defend any suit after
> the applicable limit of the company's liability has
> been exhausted by payment of judgments or settlements.

Id. ¶ 2.  "Occurrence" and "property damage" are defined as

follows:

> **"Occurrence"** means an accident, including continuous or
> repeated exposure to conditions, which results in
> bodily injury or property damage neither expected nor

4

>intended from the standpoint of the insured;
>
>**"Property damage"** means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Id. ¶ 3. The Pre-1985 Policies have the following exclusion ("qualified pollution exclusion"):

>**Exclusions**
>
>This insurance does not apply:
>
>(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Id. ¶ 4.

Globe also issued to Bel Air policy no. GY AE29422 (August 1, 1985 - August 1, 1988), which contains the same general liability coverage language as in the Pre-1985 Policies, except that the "pollution exclusion" is replaced by an endorsement that does not contain a sudden and accidental exception. Id. ¶ 5. Similarly, Globe issued the following policies: policy no. GSP089722 for the policy period August 1, 1988, to August 1, 1989; policy no. GSP 150040 for the policy period August 1, 1989, to August 1, 1990; policy no. GTY 425071 for the policy period August 1, 1990, to August 1, 1991; and policy no. GTY 425072 for the policy period August 1, 1991, to September 15, 1991. Id. ¶ 6. Collectively these policies are referred to as the Post-1985 Policies.

C.  Witness Evidence

1.  Lowell Baker

Lowell Baker ("Baker") testified that from 1982 to 1989 he worked for Bel Air at the Property. Bel Air Statement Undisputed Facts ("BA SUF"), Doc. #68-2, ¶ 41. He would regularly park his car behind the dry cleaning facility at the Property. Id. On one occasion, Baker saw a liquid pooled around a 55-gallon drum. Id. ¶ 42. He did not know what was in the drums but was sure it was not rain. Id.

2.  Melva Jo Kirby

Melva Jo Kirby's ("Kirby"), a named defendant in the underlying action, testified that her former husband, Ronald Armstrong, called to tell her that a machine at the dry cleaning facility failed and caused PCE to leak. Id. ¶¶ 31-32.

3.  Joseph Armstrong

Joseph Armstrong, son of Kirby and Ronald Armstrong, testified that he remembers that when he was 12 years old, his father and stepmother had an argument about replacing one of the dry cleaning machines because it was leaking at the time. Id. ¶¶ 35, 37.

II. ANALYSIS

A. Ex-Parte Applications-- Preliminary Issues

Bel Air filed an ex parte application to strike factual material in Arrowood's reply or, in the alternative, granting leave to file a sur-reply by Bel Air (Doc. #79). Bel Air also filed an ex parte application for leave to file statement of recent decision...(Doc. #88). Arrowood filed an ex parte

application (1) to file a reply brief in excess of 10 pages; (2) to request to file a sur-sur-reply; and (3) with a notice of non-objection to Bel Air's request for a sur-reply (Doc. #84).

The Court denies all of the ex parte applications because the parties have had ample opportunity to address the issues before the Court and the recent decision issued by Judge England has no significant precedential effect on this Court in this case.

### B. Arrowood's Evidentiary Objections

In its motion for summary judgment and in its opposition to Bel Air's motion for summary judgment, Arrowood objects to Bel Air's evidence. Specifically, Arrowood objects to the testimony of Joseph Armstrong and Kirby because the testimony is inadmissible hearsay.

#### 1. Melva Jo Kirby

Arrowood argues that the Kirby's testimony is inadmissible hearsay because she never saw the spill. See Arrowood Opp. at 1-15. Kirby in her deposition testified that her former husband, Ronald Armstrong, called to tell her that a machine at the dry cleaning facility failed and caused PCE to leak. BA SUF ¶¶ 31-32. Citing Mitroff v. United Servs. Auto. Ass'n, 72 Cal. App. 4th 1230, 1238 n.4 (1999), Bel Air argues that these statements are not hearsay because they are not offered at this time for the truth of the matter asserted but to demonstrate that Arrowood is aware of information that reveals a potential for liability. In Mitroff, the plaintiff objected to the trial court's consideration of hearsay evidence from police and medical reports and on appeal, the court held that it was not hearsay because it

was not submitted for the truth of the matter asserted but instead, were relevant to determine the insurance company's knowledge. Id. Similarly, here, Bel Air does not offer the Kirby's statements to show that PCE released or the machine failed but only to show that there is a potential for liability. Accordingly, the Court finds that Kirby's statements are not inadmissible hearsay with respect to Bel Air's motion on the duty to defend issue.

### 2. Joseph Armstrong

Arrowood argues that the testimony of Joseph Armstrong, son of Kirby and Ronald Armstrong, is inadmissible hearsay. See Arrowood Opp. at 16. Joseph Armstrong testified that he remembers that when he was 12 years old, his father and stepmother had an argument about replacing one of the dry cleaning machines because it was leaking. BA SUF ¶¶ 35, 37. As with Kirby's statements mentioned above, the testimony was not offered for the truth of the matter asserted, but to show potential for liability and therefore, it informs the duty to defend issue regardless of whether the leak ultimately proves to be true or not. Therefore, the Court holds that Joseph Armstrong's statements are not inadmissible hearsay with respect to Bel Air's motion on the duty to defend issue.

### C. Duty to Defend vs Duty to Indemnify

The parties disagree on whether this case involves a duty to defend or duty to indemnify. Arrowood has moved for partial summary judgment on the duty to indemnify Bel Air. Arrowood Mot. at 1. Contrastingly, Bel Air moves for partial summary judgment on Arrowood's duty to defend. Bel Air Mot. at 1. In a footnote,

Arrowood states that it "will move separately on when the duty to defend terminated after this motion is decided whether that duty ever existed." Arrowood Mot. at 1 n.3. In Bel Air's opposition, Bel Air states that because the underlying action is still pending, the only issue properly before the court is the duty to defend issue. Bel Air Opp. at. 12.

Because the duty to defend is broader than the duty to indemnify, the Court will first take up Bel Air's motion for summary judgment. See Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945, 958 (2001) ("Where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify.")

### 1. Bel Air's Motion for Summary Judgment

The Pre-1985 Policies contain a qualified pollution exclusion, which excludes property damage caused by pollutants but "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." Bel Air argues that there is a potential for coverage under this provision of the Pre-1985 Policies. Arrowood argues that Bel Air's evidence does not support Arrowood's duty to defend. The parties disagree as to who bears the burden in this case. See Bel Air Mot. at 11-12.

Under California law, in duty to defend cases, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993); see also Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295 (1993). "An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability

9

under the policy." Gray v. Zurich Ins. Co., 65 Cal.2d 263, 276–77 (1966). To prevail in an action seeking declaratory relief:

> the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

Montrose, 6 Cal.4th at 300. Once that possibility of coverage has been raised, then the insurer may defeat such claim of coverage by extrinsic evidence, but only where "such evidence presents undisputed facts which conclusively eliminate a potential for liability." Id. at 298-299.

Arrowood argues that "Bel Air bears the burden to prove that the claim falls within the 'sudden and accidental' exception to the qualified pollution exclusion because the exception reinstates coverage otherwise excluded." Arrowood Opp. at 7. As mentioned above, Bel Air does bear the initial burden, but only to show that there is a potential for coverage. The cases cited by Arrowood, Aeroquip Corp. v. Aetna Cas. & Sur. Co., Inc., 26 F.3d 893, 894 (9th Cir. 1994), and American States Ins. Co. v. Sacramento Plating, Inc., 861 F. Supp. 964, 969 (E.D. Cal. 1994) aff'd, 99 F.3d 1145 (9th Cir. 1996), do not alter the burden of proof used in duty to defend cases. Aeroquip is distinguishable because it was an indemnity action, Aeroquip, 26 F.3d at 895, and American States Insurance Co. does not mention the "potential for liability" standard used in duty to defend cases. See A-H

10

Plating, Inc. v. Am. Nat'l Fire Ins. Co., 57 Cal. App. 4th 427, 443 (1997) (noting that American States Insurance Co. failed to take into consideration Montrose, 6 Cal. 4th 287, as to the insurer's burden of proof).  Therefore, in this case, Bel Air bears the initial burden of establishing that there is any potential that the release or escape of at least some of the pollutants was "sudden and accidental."  Then, in order to defeat this claim, Arrowood must produce undisputed evidence that conclusively eliminates a potential for liability.

### a. Potential Liability

In this case, both parties agree that VOCs, including PCE, caused damage to the Property and that VOCs, including PCE and TCE, constitute pollutants within the meaning of the Pre-1985 Policies.  See Bel Air Mot. at 2, 13-15; Arrowood Reply at 1.  In its opposition, Arrowood argues that Bel Air's evidence does not create a reasonable inference of a sudden and accidental release.  Thus far, Bel Air's evidence consists of the following: (1) the pleadings in the underlying action, which do not mention the manner in which the soil and groundwater became contaminated; (2) Lowell Baker's testimony that he saw a pool of liquid he could not identify sometime between 1982 and 1989; (3) Kirby/Armstrong was told about a PCE spill; and (4) Joseph Armstrong testified that his parents argued about a leaking machine.  Bel Air claims that from this evidence, it is unclear whether the Property was contaminated because the release or escape of at least some of the pollutants was "sudden and accidental."  However, the possibility exists and any doubt must be resolved at this stage in favor of Bel Air.  Montrose, 6

11

Cal.4th at 300 ("Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.")

Arrowood contends that Bel Air's argument is mere speculation, which is insufficient, relying on State v. Allstate Ins. Co., 45 Cal. 4th 1008, 1037 (2009), and Travelers Casualty Surety Co. v. Superior Court, 63 Cal. App. 4th 1440, 1460 (1998). Arrowood Opp. at 10. These two cases are factually distinguishable from the case at bar in that the underlying actions were complete and the court was making a post hoc determination as to coverage. See Allstate Ins. Co., 45 Cal.4th at 1014 ("This case arises from efforts by the State of California . . . to obtain insurance coverage for property damage liability imposed in a federal lawsuit . . . ."); Travelers Cas and Sur. Co., 63 Cal.App.4th at 1448 (1998) ("This matter arises from the efforts of Lockheed Martin Corporation (Lockheed) to obtain insurance coverage for its multi-million dollar liability for cleanup of environmental contamination at 13 sites in California and other states.")

Contrastingly, as Bel Air argues, discovery in the underlying suit is not complete and has been stayed several times, and therefore, information on the type of releases that caused or contributed to the contamination of the Property may still be discovered. Accordingly, the Court finds that there is a potential for coverage. See Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co., 847 F. Supp. 1460, 1470 (finding that a duty to defend existed because the complaint was broad enough to encompass the possibility that a sudden accident caused

the damages and because discovery in the underlying matter was far from complete).

      b.   <u>Eliminating the Potential for Liability</u>

Arrowood has failed to provide any evidence that conclusively eliminates a potential for liability.  Instead, Arrowood argues that it has deposed all of the witnesses who may have potential knowledge about sudden and accidental releases at the Property and none of them have information on how the pollutants were released.  Arrowood further argues that Bel Air has identified other witnesses in violation to Federal Rule of Civil Procedure 26, and that Bel Air's destruction of the building site entitles it to an inference in its favor.  Arrowood Opp. at 16. These arguments are addressed below.

      (i)   Discovery

The underlying action has been stayed multiple times. Further, the discovery cutoff for the underlying suit is July 25, 2014, Bel Air has not initiated depositions in the underlying action, and expert designations and reports are not due until September 25, 2014.  Therefore, discovery is not exhausted and given the incomplete state of the factual record, this Court cannot conclusively find that there is no potential for coverage.

      (ii)   Witnesses

Arrowood argues that Bel Air in its motion for summary judgment has for the first time identified the following witnesses: (1) a local resident at a public meeting; (2) Herb, an employee of the barber shop next to the Arnold Palmer Cleaners; (3) Robert "Bob" Brown, a former employees of the Arnold Palmer Cleaners; and (4) a male, name unknown, who was also a former

13

1    employee of the Arnold Palmer Cleaners.  However, the Court has
2    not relied on any of these witnesses for the determination of
3    this motion; therefore, the Court need not address whether they
4    were properly disclosed.
5                    (iii)   Demolition of Building
6        Arrowood argues that destruction of the Arnold Palmer
7    Cleaners building site entitles it to an inference in its favor
8    because tearing down the building is evidence spoliation.  Bel
9    Air argues that when the building was destroyed in June 2008, it
10   did not have a duty to preserve the building and the building was
11   not material.
12       A party's destruction of evidence qualifies as spoliation if
13   the party has some notice that the evidence was potentially
14   relevant to the litigation before it was destroyed.  See United
15   States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir.
16   2002).  "As soon as a potential claim is identified, a litigant
17   is under a duty to preserve evidence which it knows or reasonably
18   should know is relevant to the action."  Realnetworks, Inc. v.
19   DVD Copy Control Ass'n, Inc., 264 F.R.D. 517, 523-24 (N.D. Cal.
20   2009) (citation omitted).  "The future litigation must be
21   'probable,' which has been held to mean 'more than a
22   possibility.'"  Id. (quoting Hynix Semiconductor Inc. v. Rambus,
23   Inc., 591 F.Supp.2d 1038, 1061 (N.D. Cal. 2006)).
24       Arrowood argues that Bel Air was under an obligation to
25   preserve the building after it discovered PCE at the property in
26   2007 because it knew about the contamination and knew that the
27   nature and scope of the releases would be at issue.  The building
28   was destroyed in 2008, the underlying action was filed in 2010,

14

1   and this action was filed in 2011. Therefore, the contamination
2   might have placed Bel Air on notice of a potential CERCLA action,
3   but at the time the building was destroyed, it was not probable
4   that the building would be relevant to an insurance coverage
5   action. Arrowood relies on AmeriPride Services, Inc. v. Valley
6   Indus. Serv., Inc., S-00-113 LKK/JFM, 2006 WL 2308442, at *5, 9-
7   10 (E.D. Cal. Aug. 9, 2006). In AmeriPride Services, the court
8   held that in an action for removal costs under CERCLA, "drawing
9   an adverse inference against AmeriPride is an appropriate
10  sanction" for the failure to preserve evidence from the
11  contaminated property. However, unlike in this case, in
12  AmeriPride, the building was destroyed during the pendency of the
13  litigation, which was not an insurance coverage case. Therefore,
14  the Court does not find that the destruction of the building was
15  spoliation of evidence.
16      In sum, Arrowood has not conclusively eliminated a
17  potential for liability. It is therefore premature for this Court
18  to conclude that there is no potential that the release or escape
19  of at least some of the pollutants was "sudden and accidental."
20  Accordingly, the Court finds that Arrowood owes Bel Air a duty to
21  defend and grants summary judgment in favor of Bel Air on this
22  issue.
23          2.   Arrowood's Motion for Summary Judgment
24      Arrowood moves for partial summary judgment on the duty to
25  indemnify Bel Air. Arrowood also moves for summary judgment on
26  the Post-1985 Policies because they contain an absolute pollution
27  exclusion.
28

15

a.  <u>Post-1985 Policies</u>

Unlike the Pre-1985 Policies, the Post-1985 Policies have an absolute pollution exclusion because they do not contain an exception for sudden and accidental emissions of pollutants. Therefore, the Post-1985 Policies reduce coverage. Bel Air does not disagree that the Post-1985 Policies contain an absolute pollution exclusion. Instead, Bel Air argues that partial summary judgment on this issue is precluded because Arrowood failed to provide evidence that it gave the required notice of the limitation to its insured. Bel Air Opp. at 20-21.

Under California law, "an insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage." <u>Fields v. Blue Shield of Cal.</u>, 163 Cal.App.3d 570, 579 (1985) (citing <u>Indus. Indem. Co. v. Indus. Accident Comm'n</u>, 34 Cal. 2d 500, 506 (1949)). Changes to or limits of coverage must be "conspicuous, plain[,] and clear" in order to be enforceable. <u>Id.</u> "Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." <u>Haynes v. Farmers Ins. Exch.</u>, 32 Cal.4th 1198, 1204, (2004).

Here, Arrowood provided each policy holder an "Important Notice," which mentions that a new pollution exclusion endorsement is in the policy. Notice, Ex. B attached to the Declaration of Sue Clark, Doc. #76-2. In addition, in the notice, sudden and accidental emissions of pollutants is listed

1  and explained under policy reductions.  Id.  Therefore, Arrowood
2  provided notice about the change in policy.  Moreover, Bel Air
3  does not argue that it did not receive notice, but only Arrowood
4  failed to provide evidence that notice was given.
5       Accordingly, because the Post-1985 Policies have an absolute
6  pollution exclusion, the Court holds that no potential for
7  coverage exists under these policies. The Court therefore grants
8  summary judgment in favor of Arrowood as to the coverage under
9  the Post-1985 Policies.
10                   b.    Duty to Indemnify
11      Arrowood moves for summary judgment on the duty to indemnify
12 issue because Bel Air has had ample opportunity for discovery and
13 there is no evidence of a sudden, accidental, non-trivial and
14 indivisible discharge of PCE.  Bel Air argues that the Court may
15 not determine whether a duty to indemnify exists because the
16 underlying action is still pending.
17      Unlike the duty to defend, "[t]he insurer's duty to
18 indemnify runs to claims that are actually covered, in light of
19 the facts proved." Buss v. Superior Court, 16 Cal. 4th 35, 45-46
20 (1997) (citation omitted).  The duty to indemnify "arises only
21 after liability is established." Id. at 46.  Nevertheless, "when
22 the coverage question is logically unrelated to the issues of
23 consequence in the underlying case, the declaratory relief action
24 may properly proceed to judgment." Montrose Chem. Corp. v.
25 Superior Court, 6 Cal. 4th 287, 302 (1993).
26      In its reply, Arrowood argues that the underlying action is
27 unrelated to this action and therefore, the Court may properly
28 proceed to judgment.  See Am. States Ins. Co. v. Superior Court,

33 Cal. Rptr. 2d 616, 622 (1994) (depublished) ("A state's CERCLA action is based on strict liability and the cause of contamination is irrelevant.")  However, the underlying action as mentioned above, is related to this action to the extent that discovery has not been concluded and evidence of a sudden and accidental emission may still be discovered.  Therefore, the Court finds that it cannot determine Arrowood's duty to indemnify at this time.

Accordingly, the Court denies Arrowood's motion for partial summary judgment without prejudice as to the duty to indemnify issue.

### c.  Page limits Sanctions

Arrowood's Counsel Sedgwick, LLP's Reply (Doc. #18) to Bel Air's Opposition to the Motion for Summary Judgment, failed to comply with the Court's Order on Page Limits (Doc. #5-2). Sedgwick, on behalf of Arrowood, filed an untimely ex parte motion for permission to submit a reply a brief in excess of 10 pages (Doc. #84).  However, a request to file a brief exceeding the page limit must be filed before the brief at issue is filed. Accordingly, Sedgwick is ordered to pay a sanction in the amount of $200.00 ($50.00 per page for the four pages over the page limit) within ten (10) days of the date of this order.

### D. ORDER

For the reasons set forth above, the Court GRANTS Bel Air's motion for summary judgment on the duty to defend issue.  The Court also GRANTS in part Arrowood's motion for summary judgment as to coverage under the Post-1985 Policies and DENIES in part

without prejudice Arrowood's motion for summary judgment as to the duty to indemnify.  Arrowood's Counsel Sedgwick is hereby ordered to pay $200 in sanctions within ten (10) days of the date of this order.

    IT IS SO ORDERED.

    Dated:  March 3, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE